HARRY SMITH, Plaintiff, *v.* ANCHOR LINES (HENDERSON BROS.), LIMITED, Defendant.

City Court of New York, Bronx County, February 17, 1932.

*Neil P. Cullom, James E. Freehill* and *Henry W. Steingarten,* for the plaintiff.

*Lord, Day & Lord* and *James S. Hemingway,* for the defendant.

DONNELLY, J. These are two actions, in each of which the plaintiff sues to recover damages for breach of two separate contracts of carriage, under which there were delivered two shipments of pears aboard the steamship *Caledonia* and the steamship *Carinthia* on September 7 and 8, 1927, respectively. The contracts between the parties provided for the stowage of the pears in a refrigerator compartment aboard each of the vessels, the temperatures to be maintained therein to be from thirty-five degrees to forty degrees. There seems to be no dispute that, if at the time the fruit was stowed

in the defendant's vessels it was green and hard, it would arrive at its destination (in one case Glasgow and in the other Liverpool) in good condition, provided that during the voyage the temperature in the compartments did not exceed forty degrees. The defendant concedes that, while the pears were in transit on its vessels, they were subjected to temperatures of from fifty degrees to fifty-five degrees, and that upon arrival the pears were in a damaged condition. Defendant's defenses are: (1) That at the time of shipment aboard its vessels the fruit was ripe, and that whatever damage ensued was because of that condition; and (2) the damage was caused by frost, heat, decay or putrefaction, causes excepted in the bills of lading, which are the contracts between the parties. So far as the first defense is concerned, it is not sustained by the evidence. On the contrary, I believe that, after a review of the oral testimony and the depositions, the weight of the evidence shows that at the time of shipment the fruit was in fit condition for shipment. Plaintiff, who examined it at that time, so testified. No eyewitness of the condition of the fruit at the time it was received aboard defendant's vessels was produced by it. The opinion evidence given by its witnesses on that subject was purely conjectural. So far as the second defense is concerned, the defendant in its brief limits the cause of the damage to decay and putrefaction. Under this defense, defendant contends that to prove damage plaintiff must show that it was negligent. Upon the evidence, there is no good reason to doubt that when the fruit was received by the defendant, it was in a proper condition for shipment, and should have remained in such condition until it reached its destination had the temperatures plaintiff contracted for been maintained during the voyage. Anything in excess of those temperatures would subject the fruit, which was in proper condition for shipment at the time it was received by defendant, to the risk of damage, which is exactly what happened. There was thus affirmative evidence of defendant's negligence. *Austin Nichols & Co., Inc.*, v. *Compania Trasatlantica* (218 App. Div. 660) has no application. The burden was upon the defendant to show that the damage was occasioned by a cause for which it was not responsible. (*The Samland* [*Van Dyk & Lindsay, Inc.*, v. *Steamship Samland*], [D. C.] 7 F. [2d] 155; 1925 A. M. C. 1198, citing *The Folmina*, 212 U. S. 354; *Andean Trading Co.* v. *Pacific Steam Navigation Co.*, [C. C. A.] 263 F. 559.)

It is true that Webb had no personal knowledge of any sales of pears at Glasgow on or about September 16, 1927. But this witness testified that he has been a fruit broker and auctioneer for thirty years, and that he has been engaged in the importation into Glasgow of pears from the United States for twenty-five years. Webb

was, therefore, qualified to give his opinion of the market value of the fruit at the time in question. When he swore that he considered fourteen shillings, six pence to seventeen shillings, six pence per box reported by Lloyd's surveyor to be the fair market value of pears in Glasgow in September, 1927, he gave his own valuation and not the declaration as to value by Lloyd's surveyor. McCaig, Webb's partner, who testified upon the same subject, has been a fruit broker for twenty-two years, and for all but two years of that period he has made frequent examination at Glasgow of shipments of fruit during the months of February and August. McCaig's response, in reply to the fourth cross-interrogatory, if taken by itself, is given in such a way as to make it appear to be hearsay. Reading his deposition in its entirety, it is apparent that his answer was the expression of opinion by an expert qualified to testify upon the subject. In action No. 1 (steamship *Caledonia*), verdict directed for plaintiff for the amount demanded in the complaint, $1,164.13, with interest thereon from September 20, 1927, $302.67; total, $1,466.80, and costs; and in action No. 2 (steamship *Carinthia*) verdict directed for plaintiff for $2,243.34, with interest thereon from September 19, 1927, $583.27; total $2,826.61, and costs.

Exception to defendant in each instance. Ten days' stay and thirty days to make and serve a case allowed.